*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## OPINION

No. 04-10-00065-CV

Michael **CARESS**, Michael York and Manuel Villarreal,
Appellants

v.

Jane M. **LIRA**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CVQ-000782-D4
Honorable Oscar J Hale, Jr., Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:         Catherine Stone, Chief Justice
                 Sandee Bryan Marion, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:  September 15, 2010

AFFIRMED

This is an appeal from a partial summary judgment rendered in favor of appellee on her trespass to try title claim against appellants. The disputed property was sold to appellee, and then, one month later, also sold to appellants at a foreclosure sale. We affirm.

## BACKGROUND

The following facts are not in dispute. In 2006, Gares II, Inc. ("Gares") purchased a tract of land in a residential subdivision that included three lots, one of which is the lot at issue in this

appeal. Gares' purchase was funded by Laredo National Bank pursuant to a real estate lien note, which was secured by a first lien Deed of Trust ("the Gares Deed"). When Gares defaulted on his obligation to pay the note, the Substitute Trustee posted the property for a foreclosure sale on March 10, 2008. The next day, Gares sold the lot at issue here to appellee, Jane Lira. The bank did not execute a release of lien; therefore, none was recorded. The foreclosure sale occurred on April 1, 2008. Following the sale, the bank executed and delivered a Substitute Trustee's Deed conveying three lots, including the one at issue here, to appellants. Lira filed the underlying trespass to try title suit against the bank and the appellants. Lira subsequently filed a motion for partial summary judgment. The trial court granted the motion voiding the trustee's sale and severed Lira's claims against appellants from other claims against other parties in the underlying suit.

## DISCUSSION

To recover in her trespass to try title suit, Lira bore the burden to prove her title to the disputed property by: (1) proving a regular chain of conveyances from the sovereign, (2) establishing superior title out of a common source, (3) proving title by limitations, or (4) proving title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004); *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied). Lira's claim must rest on the strength of her title, not a weakness in the appellants' title. *Longoria*, 292 S.W.3d at 165.

In this case, there is no dispute Lira and appellants claim title from a common source; thus, Lira had only to prove she held superior title. In her motion for summary judgment, Lira argued she held superior title because the trustee's sale of the lot to appellants was void on the grounds that the bank agreed to release the lot from the lien under the Gares Deed in exchange

for Lira paying to the bank the agreed payoff amount on the lot. Lira requested and received a payoff amount as it applied to the lot, and although she paid that amount to the bank, the bank did not execute an instrument evidencing the bank's release of the lot from the Gares Deed. The bank then allowed the same lot to be sold at a foreclosure sale. In their response, appellants countered that the foreclosure sale was not void because the Gares Deed does not contemplate or authorize a partial payment of the debt owed by Gares. Instead, according to appellants, the Gares Deed requires that the entire debt secured by the deed be paid before any lien is released. Therefore, appellants argued, because Lira only made a partial payment toward Gares' debt as to the one lot, the lien on the one lot could not be released.

Our resolution of this issue centers on the construction of the Gares Deed. Generally, the construction of an unambiguous deed is a question of law. *Terrill v. Tuckness*, 985 S.W.2d 97, 101 (Tex. App.—San Antonio 1998, no pet.) (noting rules of contract construction ordinarily apply to construction of a deed). In construing a deed, our primary duty is to ascertain the intent of the parties as provided within the four corners of the document. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). We must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the deed, even if different parts of the deed appear inconsistent or contradictory. *Id.* at 462. We assume the parties intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no provision is rendered meaningless. *Id.*; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Coker*, 650 S.W.2d at 393.

The Gares Deed defines the "Mortgaged Property" to include "the real property described in Exhibit "A," which states as follows:

- 3 -

Situated in Webb County, Texas, and being the Surface Only of Lot Number Seven (7), in Block Number One (1), Lot Number One (1) in Block Number Two (2), and Lot Numbers Four (4) and Fourteen (14) in Block Number Three (3), D&J Alexander Subdivision, Unit VIII, a subdivision situated in the City of Laredo, as per the Plat recorded in Volume 25, Page 162, Webb County Plat Records.

The deed defines "Indebtedness" to include "[a]ny sums becoming due and payable pursuant to the Note." The "Payment of Indebtedness" and "Partial Payments" clauses of the deed state respectively as follows:

If [Gares] shall pay, or cause to be paid, all of the Indebtedness and does keep and perform each and every covenant, condition, and stipulation herein, in the Note contained, or in any other instrument securing, evidencing or related to the Indebtedness, then this agreement and the grants and conveyances contained herein shall become null and void, and the Mortgaged Property shall revert to [Gares] and the entire estate, right, title and interest of the Trustee and Noteholder will thereon cease; and the Noteholder in such case shall, upon request of [Gares] and at [Gares'] costs and expense, deliver to [Gares] proper instruments acknowledging satisfaction of this instrument; otherwise, this agreement shall remain in full force and effect.

. . .

Acceptance by Noteholder of any payment of less than the amount due on the Indebtedness shall be deemed acceptance on account only and the failure to pay the entire amount then due shall be and continue to be a default; and at any time thereafter and until the entire amount due on the Indebtedness has been paid, Noteholder shall be entitled to exercise all rights conferred on it by the terms of this agreement upon the occurrence of an Event of Default.

Appellants contend the Partial Payments clause does not allow a lien on a single lot to be released until the entire Indebtedness is paid in full. We do not agree with appellants' narrow interpretation of the Partial Payments clause. We construe this clause as evidencing the parties' intent that any payment less than the full amount required under the loan agreement constitutes an act of default. However, we do not construe this clause as precluding the bank from releasing its lien on a lot-by-lot basis.

- 4 -

"A seller or lienholder may execute a partial release, that is, a release of the property subject to the lien." 63 Tex. Jur. 3d *Real Estate Sales* § 414 (2010). "The seller is not required to execute a partial release unless there is an agreement to that effect." *Id.* Here, the Gares Deed does not contain a separate clause expressly entitled as an agreement between the bank and Gares allowing Gares to sell off the Mortgaged Property lot-by-lot and obtain a release of lien as to the sold lot(s). However, two clauses in the Gares Deed evidence an intent to allow for such an occurrence under certain circumstances. It is an act constituting a default if Gares "without the prior written consent of [the bank], sells, transfers, [or] conveys . . . its interest in the Mortgaged Property (*or any part thereof*) . . . ." [Emphasis added.] This clause evidences an intent by the parties that Gares may sell "any part" of the Mortgaged Property if it first obtains written consent from the bank. The deed also contains a clause that allows the bank "without notice, [to] release *any part* of the Mortgaged Property or any person liable for the Indebtedness without in any way affecting the liens hereof on any part of the Mortgaged Property not expressly released . . . ." [Emphasis added.] This clause evidences an intent by the parties that the bank may release its lien on a lot-by-lot basis.

After examining the plain language of this unambiguous deed and construing the deed in its entirety, we conclude it was the intent of the parties that the bank could release its lien as to any part of the Mortgaged Property without first requiring that the entire Indebtedness be paid in full. Lira's summary judgment evidence establishes that the bank admitted "the payoff check was sufficient for [the bank] to execute a partial release of lien releasing [the lot]" and the bank no longer had a lien against the property "[u]pon successful negotiation of the Payoff Check tendered by or on behalf of" Lira. However, despite these admissions, the bank never executed a document evidencing its release of its lien. Nevertheless, under the circumstances presented

here, we do not believe the failure to execute a written release invalidates the sale to Lira. A lien is usually extinguished upon payment of the indebtedness that it was created to secure. *Spencer-Sauer Lumber Co. v. Ballard*, 98 S.W.2d 1054, 1055 (Tex. Civ. App.—San Antonio 1936, no writ). The extinguishment is complete even without a written release. *Id.* Therefore, because the lien on the lot purchased by Lira was extinguished prior to the foreclosure sale, there was no lien as to that lot to foreclose, and the trustee had no power to transfer title to the lot to appellants. *See Diversified, Inc. v. Walker*, 702 S.W.2d 717, 721 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (if trustee conducting foreclosure sale had no lawful authority to offer property for sale, purchaser could not acquire title to the property). Accordingly, we conclude the trial court did not err in rendering summary judgment in favor of Lira on her trespass to try title claim against appellants.

## CONCLUSION

We overrule appellants' issue on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice