Opinion issued July 14, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00990-CV

———————————

American First National Bank, Appellant

V.

Jordan-Lewis
Development, L.P., Westbound Bank, and Bob Karim & Associates, L.P., Appellees



 



 

On Appeal from the 157th District Court 

Harris County, Texas



Trial Court Case No. 2008-46432

 



 

MEMORANDUM OPINION

American First National Bank
appeals the trial court’s judgment declaring that its second lien on commercial
property, which had been purchased by Jordan-Lewis Development, L.P. and
secured by a deed of trust in favor of Westbound Bank, had been satisfied.  The trial court ordered AFNB to file a
release of the lien and awarded attorney’s fees to Jordan-Lewis Development.  Bob Karim & Associates, L.P. reached a
settlement with AFNB on appeal, and we grant those parties’ joint motion to
modify the judgment in accordance with their settlement agreement.  Because we conclude as a matter of law that
the second lien was extinguished by the substitution of collateral, we affirm
the trial court’s declaratory judgment. 
Because AFNB waived its right to challenge the failure to segregate
attorney’s fees, we also affirm the trial court’s award of attorney’s fees to
Jordan-Lewis Development and Westbound Bank.

I.                 
Background

Bob Karim & Associates, L.P.
(“BKA”) purchased commercial property located on Luzon Street in Houston,
Texas.  American First National Bank
(“AFNB”) loaned BKA $210,000 to finance the purchase.  This loan was evidenced by a promissory note
and secured by a deed of trust.  AFNB
recorded its first lien on this property by filing the deed of trust in the real
property records of Harris County.

Approximately eight months later,
Bob Karim introduced Jason and Jared Huckabee, principals of The Sound Block
Inc., to his contacts at AFNB.  AFNB
loaned Sound Block $180,000 to open a music rehearsal studio.  Karim personally guaranteed the loan, and BKA
executed a second deed of trust on BKA’s Luzon Street property in favor of AFNB
as collateral for the Sound Block loan. 
In connection with this transaction, BKA executed a third party pledge
agreement in favor of AFNB as the secured party.  AFNB recorded its second lien on the Luzon
Street property by filing the deed of trust in the real property records of
Harris County.  

BKA later decided to sell the Luzon
Street property.  David Lewis, acting on
behalf of Jordan-Lewis Development, executed an earnest money contract to
purchase the Luzon Street property for $215,000.  The contract required BKA to convey the
property to Jordan-Lewis Development at closing with no liens or security
interests that would not be satisfied out of the sales price.

Before the sale to Jordan-Lewis
Development closed and at Karim’s request, the executive committee of AFNB
approved a modification to the Sound Block loan.  This approval was memorialized in a
memorandum, signed by AFNB’s president, who was also the chairman of the loan
committee.  The memorandum showed that
the second lien on the Luzon Street property would be released and a
certificate of deposit to be held at AFNB in the amount of $55,000 would be
added as collateral for the Sound Block loan. 
The memorandum did not expressly require Karim or BKA to sign an
additional assignment or pledge.  An
email from Karim to AFNB and Alamo Title confirmed that Karim would “deposit” a
$55,000 CD after receiving funds from closing the sale of the Luzon Street
property and that Karim expected that to “clear” the lien.  Karim testified that in his conversation with
AFNB about substituting collateral, there was no mention of a need for him to
sign a pledge.  Karim understood that the
CD would be collateral for the Sound Block loan.  Moreover, Karim had previously both
personally guaranteed the Sound Block loan and signed a third party pledge
agreement on behalf of BKA.  

          The
parties to the sale of the Luzon Street property engaged Alamo Title as the
escrow and closing agent.  Alamo Title
asked AFNB for a statement of the amounts required to extinguish the liens on
the property.  In response, AFNB sent a
payoff statement, which indicated that the first lien could be satisfied by
payment of $45,992.77 plus a per diem cost of approximately nine dollars.  The payoff statement also noted, “Per officer
instruction, the customer need provide a CD I/A/O $55,000.00 in order to
release the second lien.” 

Westbound Bank loaned Jordan-Lewis
Development $188,000 toward the purchase. 
In connection with closing, Westbound Bank sent Alamo Title Company a
letter with specific instructions for handling escrow and closing the
sale.  This letter stated, “You are
instructed to close this loan transaction Loan, at Borrower’s expense, insuring
WESTBOUND BANK a valid FIRST lien . . . .” 
The parties closed the transaction. 
Three days later, Jordan-Lewis Development and Westbound Bank funded the
purchase price, and the sale proceeds were then disbursed.  The final seller’s statement showed a charge
to seller at closing of $55,000 for “American First National Bank Certificate
of Deposit.”  Documents from Alamo Title
show wire transfers to AFNB to pay off the first lien and to fund a certificate
of deposit in the amount of $55,000.

          The
certificate of deposit was opened in Karim’s name, individually.  A stamp and notation on the front of the
certificate indicate that it was pledged as collateral.  The terms of the CD included the following
express right of setoff granted in favor of AFNB:  

SETOFF.  We may (without prior notice and when
permitted by law) set off the funds in this account against any due and payable
debt you owe us now or in the future, by any of you having the right of
withdrawal, to the extent of such persons’ or legal entity’s right to
withdraw.  If the debt arises from a
note, “any due and payable debt” includes the total amount of which we are
entitled to demand payment under the terms of the note at the time we set off,
including any balance the due date for which we properly accelerate [illegible]
the note.  We will not be liable for the
dishonor of any check [illegible] the dishonor occurs because we set off a debt
against this amount.  You agree to hold
us harmless from any claim arising as a result of our exercise of our right of
setoff.

 

AFNB’s general ledger shows the transaction opening
a CD in the amount of $55,000 “to pledge LN #11372, The Sound Block.”  

While BKA’s sale of the Luzon
Street property was pending, an AFNB loan assistant sent an email asking Karim
to sign certain attached documents.  The
subject-line of the email read: “the documents need to be sign.”  At trial, the loan assistant testified that
she asked Karim to sign a pledge agreement per the instructions she received
from the loan officer.  She testified
that when Karim came to the bank after the sale proceeds had been disbursed,
she personally escorted him to the new account department and then told him to
contact her after the CD was opened so that she could prepare a pledge
agreement for his signature in order to release the lien.  

          Karim’s
testimony contradicted the loan assistant’s testimony.  Karim testified that when he went to the
bank, the new accounts department contacted the loan department.  Although Karim recalled the loan assistant
meeting him, he testified unequivocally that no AFNB representative told him he
needed to sign a pledge agreement or do anything other than open the CD.  He testified that he did everything required
by AFNB: 

[W]hatever
the bank instructed, I just followed it; and whatever paper I had to sign, I
signed it. . . . I went only one time to open an account, and the only time I
could do it is when the fund was transferred from Alamo—the money was—I did not
take cash to the bank.  The fund was
already there, and it was sitting in their deposit.  I had no other instruction.  Whatever the bank asked me to do, that’s what
I did.  I had no—I went there.  I was like a puppet.  They told me, “Okay.  You need to come.”  And this lady took me to this department, and
I was just like their puppet.  They told
me to sign it, and I signed it.

 

Sometime after the closing, Sound
Block failed to make its payments to AFNB and defaulted on its lease.  After AFNB learned that Sound Block lost its
lease, it accelerated the loan.

AFNB notified Alamo Title that it
was releasing AFNB’s first lien on the Luzon Street property, but it did not
release the second lien.  Shortly
thereafter, AFNB notified all the potentially interested parties that it
intended to foreclose on the Luzon Street property.

          Jordan-Lewis
Development and Westbound Bank sought a temporary injunction to prevent the
foreclosure.  Their suit against AFNB,
BKA, and Karim also pleaded claims for a declaratory judgment regarding the
second lien, breach of contract, promissory estoppel, breach of warranty, and
conversion.  Finding a probable right to
recovery, the trial court granted the temporary injunction.  AFNB asserted cross-claims against BKA and
Karim, and those parties countersued for various claims including breach of
contract and a declaratory judgment that the second lien had been fully
satisfied.  The case was tried to a jury
on all claims except those seeking declaratory judgments.  The jury rendered a verdict in favor of
Jordan-Lewis Development and Westbound Bank on their breach of contract action,
awarding damages and attorney’s fees. 
The trial court entered a declaratory judgment invalidating the second
lien, awarding attorney’s fees to Jordan-Lewis Development from AFNB and BKA,
and awarding attorney’s fees to BKA from AFNB. 
The trial court filed findings of fact and conclusions of law.

II.              
Standards of review

A.              
Declaratory judgment

The purpose of the Declaratory
Judgments Act is “to settle and afford relief from uncertainty and insecurity
with respect to rights, status, and other legal relations.”  Tex.
Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2008); see Bonham State Bank v. Beadle, 907
S.W.2d 465, 467 (Tex. 1995); Indian Beach
Prop. Owner’s Ass’n v. Linden, 222 S.W.3d 682, 699 (Tex. App.—Houston [1st
Dist] 2007, no pet.).  The statute is
“remedial” and “to be liberally construed.” 
Id.  A declaratory judgment is appropriate only if
a justiciable controversy exists as to the rights and status of the parties,
and a declaration will resolve the controversy.  Bonham State Bank, 907 S.W.2d
at 467; Fort Bend Cnty. v. Martin-Simon,
177 S.W.3d 479, 482–83 (Tex. App.—Houston [1st Dist.] 2005, no
pet.).  A trial court has discretion to
enter a declaratory judgment so long as it will serve a useful purpose or will
terminate the controversy between the parties. 
Bonham State Bank, 907 S.W.2d
at 467 (citing James v. Hitchcock Indep.
Sch. Dist., 742 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1987, writ
denied)).

We review declaratory judgments
under the same standards as other judgments. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West
2008).  We look to the procedure used to
resolve the issue below to determine the standard of review on appeal.  City of
Galveston v. Tex. Gen. Land Office, 196 S.W.3d 218, 221 (Tex. App—Houston
[1st Dist.] 2006, pet. denied).  A trial
court has no discretion when evaluating a question of law.  See
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).  When the trial court enters a declaratory
judgment after a bench trial, an appellate court applies a sufficiency of the
evidence review to the trial court’s factual findings and reviews its conclusions
of law de novo.  See Black v. City of Killeen, 78 S.W.3d 686, 691 (Tex. App.—Austin
2002, pet. denied).  We must uphold the
trial court’s determination in a declaratory judgment action if it can be
sustained upon any legal theory supported by the evidence.  Bell v.
Katy Indep. Sch. Dist., 994 S.W.2d 862, 864 (Tex. App.—Houston [1st Dist.]
1999, no pet.).

B.              
Legal and factual sufficiency

In an appeal of a judgment rendered
after a bench trial, the trial court’s findings of fact have the same weight as
a jury’s verdict, and we review the legal and factual sufficiency of the
evidence to support them as we would review a jury’s findings.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re K.R.P., 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). To
determine whether legally sufficient evidence supports a challenged finding, we
must consider evidence that favors the finding if a reasonable fact-finder
could consider it, and we must disregard evidence contrary to the challenged finding
unless a reasonable fact-finder could not disregard it.  See
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  This Court may not sustain a legal
insufficiency, or “no evidence,” point unless the record demonstrates (1) a
complete absence of evidence of a vital fact; (2) that the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) that the evidence offered to prove a vital fact is
no more than a mere scintilla; or (4) that the evidence conclusively
establishes the opposite of the vital fact. 
Id. at 810.  

We review conclusions of law by the
trial court de novo and will uphold them if the judgment can be sustained on
any legal theory supported by the evidence. 
Noble Mortg. & Invs., LLC v. D
& M Vision Invs., LLC, No. 01-09-00987-CV, 2011 WL 940756, at *7 (Tex.
App.—Houston [1st Dist.] Mar. 17, 2011, no pet.); In re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  The trial court’s conclusions of law are not
subject to challenge for lack of factual sufficiency, but we may review the
legal conclusions drawn from the facts to determine their correctness.  Brown
v. Brown, 236 S.W.3d 343, 348 (Tex. App.— Houston [1st Dist.] 2007, no pet.). 


III.          
Analysis

AFNB brings
nine issues on appeal.  Eight issues
challenge the propriety of the trial court’s declaratory judgment invalidating
the second lien. The remaining issue argues that the trial court abused its
discretion by awarding attorney’s fees.  

A.              
Satisfaction of lien

AFNB argues that the payoff
statement, which stated that the deposit of a $55,000 CD would extinguish the
second lien, does not affect the legal rights of the parties.  Most of AFNB’s briefing is focused on whether
the payoff statement was an enforceable contract, whether the parties could be
bound to it by the actions of the escrow agent, and whether Jordan-Lewis
Development and Westbound Bank had standing to bring a breach of contract case
against AFNB.  We begin by considering
the legal effect of the payoff statement.

AFNB argues that “a payoff
statement is not anything close to a binding agreement.  Rather, it is merely a communication of
mathematical fact: the outstanding principal balance and accrued interests
owing on a loan as of a certain date.” 
But in this case mathematical facts can have legal consequence because
“[a] lien is usually extinguished upon payment of the indebtedness that it was
created to secure.”  Caress v. Lira, 330 S.W.3d 363, 366 (Tex. App.—San Antonio 2010,
pet. denied) (citing Spencer–Sauer Lumber
Co. v. Ballard, 98 S.W.2d 1054, 1055 (Tex. Civ. App.—San Antonio 1936, no writ)).  When a lien is extinguished by the payment of
the indebtedness, the “extinguishment is complete even without a written
release.”  Id.  The Texas Property Code
defines a “payoff statement” as “a statement of the amount of: (A) the unpaid
balance of a loan secured by a mortgage, including principal, interest, and
other charges properly assessed under the loan documentation of the mortgage;
and (B) interest on a per diem basis for the unpaid balance.”  Tex.
Prop. Code Ann. § 12.017(a)(5) (West Supp. 2010).  The Property Code also provides for release
of a lien based on satisfaction of the terms of the payoff statement.  It provides:

An
authorized officer of a title insurance company or an authorized title
insurance agent may, on behalf of the mortgagor or a transferee of the
mortgagor who acquired title to the property described in the mortgage, execute
an affidavit that complies with the requirements of this section and record the
affidavit in the real property records of each county in which the mortgage was
recorded.

 

Id.
§ 12.017(c).  The statute prescribes
the form for the “Affidavit as Release of Lien” referenced in Section
12.017(c).  That affidavit must provide,
among other things, that the “[a]ffiant has ascertained that Title Company
delivered to Mortgagee payment of the loan secured by the mortgage in the
amount and time and to the location required by the payoff statement.”  Id.
§ 12.017(d).  It must also state
that “Pursuant to Section 12.017, Texas Property Code, this affidavit
constitutes a full and final release of the mortgage from the property.”  Id.  Considering the plain language of these
statutory provisions, we reject AFNB’s argument that a payoff statement is not
“anything close to . . . binding.” 
Rather, we conclude that satisfaction of the debt underlying the lien,
in an amount and manner as reflected in the payoff statement, extinguishes the
lien.  To conclude otherwise would
contradict the Legislature’s plainly expressed intention, as reflected in the
statute providing that release of the lien may be established by a title
company’s affidavit demonstrating that payment had been made according to the
terms of the payoff statement.

Upon request, AFNB sent Alamo Title
a payoff statement indicating that the first lien could be satisfied by payment
of $45,992.77 plus a per diem cost of $8.9291. 
The basis for this was the loan agreement and deed of trust underlying
the first lien.  The payoff statement
further provided a payoff amount for the second lien of $55,000.00 with a note
that stated, “Per officer instruction, the customer need provide a CD I/A/O
$55,000.00 in order to release the second lien.”  The basis for this was the memorandum
approved by AFNB’s executive committee. 
The subject of this memorandum was “Total release the lien on R/E
located at 1813 Luzon Street, Houston, TX 77009 being collateral of the subject
note [the Sound Block loan].”  The
memorandum stated that the original terms of the loan would be modified and the
second lien would be released in exchange for an AFNB CD in the amount of
$55,000. 

The parties agree that after
Westbound Bank funded Jordan-Lewis Development’s purchase of the Luzon Street
property, Karim went to AFNB and opened a CD with the $55,000 that was transferred
to AFNB as part of the real estate transaction. 
The parties also agree that Karim never executed an additional third-party
pledge agreement.  Even so, execution of
a pledge agreement was not required by either the payoff statement or AFNB’s memorandum
memorializing the agreement it reached with Karim as to substituting
collateral.  In addition, the CD itself
was stamped “pledged” with a notation that it was collateral for the Sound
Block loan, and it included an express right of setoff.  As to the second lien, Karim satisfied the
terms of the payoff statement and the agreement underlying it.  We conclude, as a matter of law, that his purchase
of a $55,000 CD with AFNB extinguished the second lien.  See
Caress, 330 S.W.3d at 366.

AFNB devotes much of its briefing
to arguing that Jordan-Lewis Development and Westbound Bank lacked standing to
pursue a breach of contract claim because they lacked privity with respect to
the payoff statement.  Our decision, like
the trial court’s judgment, does not depend on a breach of contract
theory.  Because we decide only that
satisfaction of the requirements to release the second lien extinguished it, we
need not address any of the arguments relating to the standing of Jordan-Lewis
Development and Westbound Bank to pursue a contract action.  Rather, we conclude that Jordan-Lewis
Development and Westbound Bank properly sought a declaration of their rights in
light of the extinguishment of the second lien. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001, .003,
.004 (West 2008).  

We overrule issues one through
seven and issue nine.

B.              
Attorney’s fees

AFNB argues that the trial court
abused its discretion in awarding attorney’s fees because they are not
available when the declaratory relief sought is to clear or remove a cloud on
title.  AFNB further argues that there is
no evidence that the fees awarded were reasonable and necessary because
Jordan-Lewis Development and Westbound Bank failed to segregate their fees.

AFNB first argues that the
underlying suit in this case was one to quiet title, for which attorney’s fees
are not recoverable.  But each of the
cases relied upon by AFNB involved suits to quiet title that were equivalent to
trespass-to-try title actions, for which attorney’s fees may not be recovered.  See
Florey v. Estate of McConnell, 212 S.W.3d 439, 448–49 (Tex. App.—Austin
2006, pet. denied).  A declaratory
judgment action to determine the validity of a real property lien, such as was
asserted in this case, is not akin to a trespass to try title suit because it does
not seek title and possession.  Instead,
it seeks to determine the validity of a lien and entitlement to proceeds from
the sale of the real property.  Id. at 449.

In this case, the underlying suit
did not seek both title and possession.  Instead it sought a judicial determination
that the second AFNB lien had been extinguished by Karim’s purchase of the
$55,000 CD, in accordance with Karim’s and AFNB’s agreement, which was
memorialized in AFNB’s executive committee memorandum and communicated to all
parties to the sale through the payoff statement.  We conclude that this was not a trespass to
try title suit for which fees could not be recovered, so we must next consider
whether the trial court abused its discretion in awarding attorney’s fees to
Jordan-Lewis Development and Westbound Bank.

AFNB argues that the evidence was
factually insufficient to support the award because segregation of fees is
required to show they were reasonable and necessary, yet Jordan-Lewis
Development and Westbound Bank failed to provide such proof so as to segregate
fees for they which had no right of recovery from AFNB (i.e. their claims
against other parties, and the declaratory judgment claim).

The Declaratory Judgments Act
provides that the trial court may award costs and reasonable attorney’s fees
when doing so is equitable and just.  Tex. Civ. Prac. & Rem. Code Ann. §
37.009 (West 2006).  Because the Act does
not require an award of attorney’s fees, we review the trial court’s judgment
awarding attorney’s fees for an abuse of discretion.  See
Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998); see, e.g., Mitchell v. Fort
Davis State Bank, 243 S.W.3d 117, 126 (Tex. App.—El Paso 2007, no
pet.).  Attorney’s fees awarded under the
Act must be reasonable, necessary, equitable, and just.  See
Bocquet, 972 S.W.2d at 21.

Texas law does not allow for
recovery of attorney’s fees unless authorized by statute or contract.  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310 (Tex. 2006).  “As a result, [attorney’s] fee claimants have
always been required to segregate fees between claims for which they are
recoverable and claims for which they are not.” 
Id. at 311.  However, the party opposing an award of
attorney’s fees must make a timely objection. 
Green Int’l, Inc. v. Solis,
951 S.W.2d 384, 389 (Tex. 1997); Hruska
v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988).  Such an objection must be made before the
trial court renders judgment.  See Tex.
R. App. P. 33.1(a)(1); cf. Donihoo
v. Lewis, No. 01-08-00277-CV, 2010 WL 1240970, at *14 (Tex. App.—Houston
[1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) (holding that segregation of
attorney’s fees must be raised before trial court renders judgment).

At the charge conference, AFNB did
not object to the failure to segregate attorney’s fees or request an
instruction thereon.  AFNB first raised
this issue in its motion for new trial. 
However, this motion was filed nearly a full month after the trial court
rendered judgment.  Because AFNB’s objection
to the failure to segregate attorney’s fees was not raised before the trial
court rendered judgment, AFNB has waived this objection on appeal.  See
Tex. R. App. P. 33.1(a).  

We overrule issue number eight.

C.              
BKA and AFNB’s settlement

AFNB and
BKA filed a joint motion informing the Court that they have settled the controversies
between them that relate to this appeal. 
They ask this Court to render judgment in accordance with their
settlement.  We grant the parties’
motion, vacate the portion of the trial court’s judgment rendering declaratory
judgment in favor of BKA, render judgment that BKA take nothing by its claims
against AFNB, and order that BKA and AFNB each bear its own costs of court.  See Akin,
Gump, Strauss, Hauer & Feld, L.L.P. v. Nat’l Dev. and Research Corp., 313
S.W.3d 467, 468 (Tex. App.—Dallas 2010, no pet.) (rendering take-nothing
judgment in accordance with parties’ agreement); see also Tex. R. App. P.
42.1(a)(2).  

Conclusion

Pursuant to the parties’ agreement, we vacate the
portion of the trial court’s judgment rendering declaratory judgment in favor
of Bob Karim & Associates, L.P., and we and render judgment that it take
nothing.  We overrule all remaining
issues brought by appellant American First National Bank, and accordingly we affirm
the remainder of the judgment.  

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Sharp, concurring without opinion.