Irma LEMUS and Manuel Lemus, Appellants

v.

John Rene AGUILAR, Johnny B. Wells, Laura Ashley Wells, and Johnny Montoya Garza, Appellees

No. 04–14–00609–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: March 16, 2016

53

Anita Jane Anderson, San Antonio, for Appellees.

Sarah Lishman, Jamie Graham & Associates, PLLC, Ana Laura Hessbrook, San Antonio, for Appellants.

## OPINION

Opinion by: Patricia O. Alvarez, Justice

On February 10, 2016, we issued an opinion and judgment in this appeal. On February 17, 2016, Appellants Irma Lemus and Manuel Lemus Jr. filed a motion for rehearing. Although we deny the motion for rehearing, on our own motion, we withdraw our opinion and judgment of February 10, 2016, and substitute this opinion and judgment in its stead.

This appeal stems from a trespass to try title action. Appellants Irma Lemus and Manuel Lemus Jr. appeal the trial court's judgment awarding Appellees John Rene Aguilar, Johnny B. Wells, Laura

Ashley Wells, and Johnny Montoya Gaza title to the property and attorney's fees, but denying all claims for reimbursement of improvements. On appeal, the Lemuses allege (1) the trial court erred in determining the purported will of Elvira G. Aguilar was actually a gift deed; (2) the evidence was factually insufficient to support the trial court's finding that the warranty deed Elvira G. Aguilar signed on January 7, 2009, was void for want of capacity; (3) the trial court erred in denying the Lemuses reimbursement for repairs, improvements, and taxes on the property located at 106 Cameo Avenue, San Antonio, Texas; (4) the trial court erred in finding the signature on the purported will was a forgery; and (5) the trial court erred in awarding attorney's fees to the appellees.

Because we conclude the "March 11, 2005 Will" was not a gift deed, we reverse the portions of the trial court's judgment naming John Rene Aguilar, Laura Ashley Wells, and Johnny B.Wells as title owners of the premises at 106 Cameo Avenue, San Antonio, Texas and the trial court's award of attorney's fees. We affirm the remaining portions of the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a 1983 divorce, Elvira G. Aguilar[1] was awarded the home at 106 Cameo Avenue, San Antonio, Texas and lived at the residence for over twenty years with her partner, Johnny Montoya Garza. Elvira had five adult children: Irma Lemus, Irene Lambert, David Agui-

lar, Annette Wells, and Nanette Aguilar. Following the tragic deaths of Annette and her husband in 1990, Elvira and Garza were named the grandchildren's managing conservators. When Elvira's grandchildren, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, came to live at the Cameo residence, a second story was added to the home. Elvira's oldest daughter, Irma Lemus, filed multiple custody suits seeking to gain managing conservatorship of the grandchildren resulting in a very contentious relationship between Elvira and Irma.

## A. "March 11, 2005 Will"

On March 11, 2005, Elvira and Garza signed a document titled "Will from Johnny Montoya Garza and Elvira G. Aguilar."[2] The "March 11, 2005 Will" provided as follows: "we agree that the house be evenly owned by John Rene Aguilar, Laura Ashley Wells and Johnny B. Wells and that nothing will be done without the authorization of John Rene Aguilar, Johnny B. Wells and Laura Ashley Wells." The document further provides that no changes will be made to the house without the authorization of the grandchildren; and, if there is a disagreement, the grandchildren were to have the final say in the matter. The document was handwritten by Garza and signed by both he and Elvira. All of the children and grandchildren knew of the document and its location in the home.

## B. Elvira Begins Exhibiting Signs of Dementia

In middle to late 2005, Elvira began exhibiting difficulty recognizing family members, and she was diagnosed with Al-

---

1. For the purposes of clarity in this opinion, all parties (with the exception of Johnny Garza) are referenced by their first names. Appellants are jointly referred to as the Lemuses.

2. We refer to this document as the "March 11, 2005 Will" throughout our opinion.

zheimer's disease. Elvira's cognitive skills continued to decline; family members reported times of relative calm, punctuated by periods of hysteria, paranoia, confusion, and violent rages. Although medication slowed the dementia, Elvira's mental capacity progressively declined. In the summer of 2006, Elvira moved into her daughter Nanette's home. Elvira's progressive deterioration, both physically and mentally, required constant care.

In November 2008, Nanette suffered a recurrence of cancer, necessitating hospitalization and admittance into a long-term care facility. Nanette passed away shortly after being admitted. When Nanette was hospitalized, Elvira was also hospitalized and subsequently moved to a nursing home. The diagnosis from Elvira's admission examination included (1) mental impairment (Alzheimer's disease and psychosis), (2) language/cognitive impairment (symbolic dysfunction), and (3) various physical maladies (diabetes and hypertension). A psychosocial evaluation, performed on November 24, 2008, concluded Elvira was so confused as to be unaware of Nanette's passing ten days prior.

## C. January 7, 2009 Deed

Six weeks later, on January 7, 2009, Laura was visiting Elvira at the nursing home when Irma arrived. Laura testified that Elvira could not recognize any family members, including either herself or Irma.

After Laura departed, Irma and Elvira also left the nursing home. Irma and Elvira were met at a coffee shop by a notary and Elvira signed a warranty deed that was prepared by an attorney at Irma's request. The deed conveyed the 106 Cameo Avenue property to the Lemuses in exchange for "love and affection." Although the attorney produced a billing statement showing the Lemuses paid for the deed's preparation, he testified that he

possessed no personal recollection of preparing the deed. The notary, who was not an employee of the attorney's office, testified the transaction was memorable because it occurred at a Starbucks, and not a law office. She also recalled Irma's telephone call requesting her services. Irma explained Elvira "was not easily mobile and asked if [Elvira] needed to be present and I did confirm that yes, she did." The warranty deed was filed of record the following day.

An evaluation by Elvira's doctor, conducted the day the deed was filed, opined Elvira suffered from psychosis, dementia, agitation, depression, and periods of physical aggression. Similarly, nursing notes in Elvira's medical chart described Elvira as confused, combative, often refusing medications, and unable to find her room without assistance.

## D. Events after January 2009

Garza was employed as a long-haul truck driver and continued to occupy the home when in town until January of 2009, when the Lemuses changed the locks. Garza testified the grandchildren also had keys to the home until that time. Elvira passed away on July 1, 2011, approximately six months before Garza filed this trespass to try title suit.

Knowing many personal items were stored in the 106 Cameo Avenue residence, the Lemuses continued to allow family members access to the garage, even after the deed was filed. The Lemuses did, however, prevent Garza from mowing the lawn and Johnny B. from actually occupying the residence. On January 6, 2012, Garza filed this trespass to try title action and was later joined by the grandchildren. In response to Garza's suit, the Lemuses blocked all access to the residence, including the items stored in the garage. Finally, in late 2012, almost a year after the suit

was filed, the Lemuses began repairs to the property.

## THE "MARCH 11, 2005 WILL"

### A. Requirements of a Will

■ Before determining any rights conveyed under the "March 11, 2005 Will," we must determine whether the document was a valid will. Because will construction is a question of law, an appellate court applies a de novo standard of review. *See Eckels v. Davis,* 111 S.W.3d 687, 694 (Tex. App.–Fort Worth 2003, pet. denied); *Hurley v. Moody Nat'l Bank of Galveston,* 98 S.W.3d 307, 310 (Tex.App.–Houston [1st Dist.] 2003, no pet.).

■ Texas Estates Code section 251.051 requires, inter alia, a last will and testament be (1) in writing, (2) signed by the testator, and (3) attested to by two or more credible witnesses. *See* TEX. EST. CODE ANN. § 251.051 (West 2014). Because the "March 11, 2005 Will" was not attested to by two witnesses, we look to whether the document qualifies as a holographic will. *See id.* § 251.052 ("[A] will written wholly in the testator's handwriting is not required to be attested by subscribing witnesses"). If the will is handwritten entirely by the testator, the testator need only affix a signature or initials to the document to execute the instrument. *See id.*; *Trim v. Daniels,* 862 S.W.2d 8, 10 (Tex.App.–Houston [1st Dist.] 1992, writ denied); *In re Estate of Standefer,* —— S.W.3d ——, ——, No. 11–14–00221–CV, 2015 WL 5191443, at *4 (Tex.App.–Eastland Aug. 21, 2015, no pet.).

Although the "March 11, 2005 Will" purported to be the will of both Elvira and Garza, it was handwritten by Garza. For it to be valid as to Elvira, section 251.052 required the holographic will be handwritten by Elvira and signed by Elvira. *See*

TEX. EST. CODE ANN. § 251.052. Without such, the document had to be signed in the presence of two competent witnesses. *See* TEX. EST. CODE ANN. §§ 251.051, .052; *see Triestman v. Kilgore,* 838 S.W.2d 547, 547 (Tex.1992) (per curiam); *Brown v. Traylor,* 210 S.W.3d 648, 661 (Tex.App.–Houston [1st Dist.] 2006, no pet.); *Bostic v. Bostic,* No. 12–02–00305–CV, 2003 WL 22047902, at *4 (Tex.App.–Tyler Aug. 29, 2003, no pet.) (mem.op.) (finding evidence holographic will was written by sister of testator raised genuine issue of material fact).

Because the will was not written by Elvira or signed in the presence of two competent witnesses, we conclude the "March 11, 2005 Will" was not a valid will under section 251.051 or section 251.052 of the Texas Estate Code. *See* TEX. EST. CODE ANN. § 251.051, .052; *Triestman,* 838 S.W.2d at 547.

Next we address whether the "March 11, 2005 Will" constitutes a gift deed.

### B. Requirements of a Gift Deed

#### 1. Standard of Review

■ Whether a document is a valid gift deed is a question of law and reviewed de novo. *Hausser v. Cuellar,* 345 S.W.3d 462, 466 (Tex.App.–San Antonio 2011, pet. denied) (en banc). Our primary duty is to ascertain the intent of the parties as provided in the four corners of the document. *Garza v. Prolithic Energy Co., L.P.,* 195 S.W.3d 137, 141 (Tex.App.–San Antonio 2006, pet. denied) (citing *Luckel v. White,* 819 S.W.2d 459, 461–63 (Tex.1991)). To do this, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the agreement, even if different parts appear inconsistent or contradictory. *Hausser,* 345 S.W.3d at 466; *Garza,* 195 S.W.3d at 141.

#### 2. Arguments of the Parties

The Lemuses contend the document fails as a gift deed because it is testamentary in nature, has no present intent of land conveyance, and was not acknowledged, witnessed, or filed.

The appellees counter the document is a valid gift deed containing the requisite language of present intent to convey the property to the grandchildren.

#### 3. Requirement for Valid Gift Deed

■ Section 5.021 for the Texas Property Code sets forth the requirements for a valid deed. *See* TEX. PROP. CODE ANN. § 5.021 (West 2014). The document must be (1) in writing, (2) signed, (3) describe the property, and (4) delivered. *See id.*; *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 869 (Tex.App.–Dallas 2005, no pet.). A valid gift of real property further requires the document set forth (1) the intent of the grantor, (2) the delivery of the property to the grantee, and (3) the gift to be accepted by the grantee. *See Troxel v. Bishop*, 201 S.W.3d 290, 296–97 (Tex.App.–Dallas 2006, no pet.); *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex.App.–San Antonio 1988, no writ). The one claiming the gift bears the burden to establish each of the elements. *See Troxel*, 201 S.W.3d at 296. "All dominion and control over the property must be released by the owner." *Id.*

■ Delivery is required, but it need not be actual or immediate. *See Adams*, 154 S.W.3d at 869; *Rothrock v. Rothrock*, 104 S.W.3d 135, 138 (Tex.App.–Waco 2003, pet. denied). If, however, the grantor intended for the title to pass immediately upon execution and acknowledgement, there is a valid constructive delivery. *See Chambers v. Equity Bank, SSB*, 319 S.W.3d 892, 900 (Tex.App.–Texarkana 2010, no pet.); *Troxel*, 201 S.W.3d at 297.

■ An unrecorded or unacknowledged instrument is binding on (1) the "party to the instrument," (2) "the parties' heirs," and (3) "a subsequent purchaser who does not pay valuable consideration or who has notice of the instrument." TEX. PROP. CODE ANN. § 13.001(b) (West 2014); *Jones v. Smith*, 291 S.W.3d 549, 554 (Tex. App.–Houston [14th Dist.] 2009, no pet.). "A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third party claim or interest." *Noble Mortg. & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 75 (Tex.App.–Houston [1st Dist.] 2011, no pet.) (citing *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001)); *accord Hue Nguyen v. Chapa*, 305 S.W.3d 316, 323 (Tex.App.–Houston [14th Dist.] 2009, pet. denied).

#### 4. Testimony at Trial

The "March 11, 2005 Will" was admitted into evidence, and Garza testified the intention behind the document was to gift the house to the three grandchildren. The testimony substantiated that all of the children knew about the document; and, until January of 2012, the grandchildren maintained access to the home. After Garza filed the trespass to try title suit, the Lemuses restricted access to the residence in question.

#### 5. Trial Court Findings of Facts and Conclusions of Law

The trial court found the "March 11, 2005 Will" constituted a present transfer of title of 106 Cameo Avenue residence to the grandchildren, subject to a life estate for the benefit of Elvira and Garza. The trial court further held the document met the requisites of a good and valid gift deed, transferring title from Elvira, as grantor, to the grandchildren, as grantees.

#### 6. Analysis

Our primary duty in determining whether the "March 11, 2005 Will" constituted a gift deed is to ascertain the intent of the parties as provided within the four corners of the document. *Caress v. Lira*, 330 S.W.3d 363, 364 (Tex.App.–San Antonio 2010, pet. denied) (citing *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991)).

 Here, the key issue turns on the intent of the donor when the document was executed. *Bush v. Bush*, 336 S.W.3d 722, 744 (Tex.App.–Houston [1st Dist.] 2010, no pet.). "A gift is a voluntary transfer of property to another made gratuitously and without consideration." *Gomer v. Davis*, 419 S.W.3d 470, 476 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *accord Magness v. Magness*, 241 S.W.3d 910, 912 (Tex.App.–Dallas 2007, pet. denied) (citing *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 569 (1961)). The court in *Nipp v. Broumley*, 285 S.W.3d at 559, further explained that establishing donative intent requires "evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an immediate and unconditional vesting of such interests in the donee." (emphasis original); *accord Gomer*, 419 S.W.3d at 476 ("Until the donor has absolutely and irrevocably divested herself of the title, dominion, and control of the subject of the gift, she has the power to revoke the gift.").

The case of *Dorman v. Arnold*, 932 S.W.2d 225, 228 (Tex.App.–Texarkana 1996, no writ), is also instructive. Arnold, a bank employee, testified the donor directed her that, upon his death, she was to change ownership of his accounts. *Id.* The court concluded that because the donor "intended for the property to remain his until his death[, o]wnership was clearly

retained" and "present donative intent was not shown." *Id.*

 Here, the conveyance in the "March 11, 2005 Will" lacks present donative intent. The document provides "[w]e agree that the house be evenly owned by [John, Laura, and Johnny]" and the document's title as a will clearly implies the donor's intent to transfer ownership of the property to the grandchildren upon the testators' deaths. The transfer did not provide for an immediate and unconditional divestment of the donors' interests. *See Gomer*, 419 S.W.3d at 476; *Nipp*, 285 S.W.3d at 559. The donors' intent is further evidenced by the document's title— "Will from Johnny Montoya Garza and Elvira G. Aguilar." By its very nature, the "March 11, 2005 Will" does not "absolutely and irrevocably divest" Elvira of "title, dominion, and control of" the 106 Cameo Avenue residence. The trial court found similarly when it determined the conveyance was encumbered with a life estate for the benefit of Elvira and Garza. Accordingly, we conclude the "March 11, 2005, Will" lacked evidence of Elvira's intent to immediately and unequivocally divest herself of all interest in the residence at 106 Cameo Avenue.

Absent present donative intent, we conclude the "March 11, 2005 Will" was not a gift deed and the trial court erred in so finding.[3]

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS

The Lemuses next challenge the sufficiency of the evidence to support the trial court's finding that (1) Elvira lacked the mental capacity to transfer the property to the Lemuses under the January 7, 2009 warranty deed and supersede the "March

---

3. Because we do not find the March 11, 2005 Will was a gift deed, we need not address the

Lemuses' contention that Elvira's signature was not authenticated.

11, 2005 Will;" and (2) the Lemuses were not entitled to the costs associated with repairs and improvements made to the property in question.

## A. Standard of Review

An appellate court sustains a legal sufficiency challenge if the record demonstrates (1) there is a complete absence of evidence on a vital fact, (2) rules of law or evidence prevent the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005); *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller,* 168 S.W.3d at 822. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

 When reviewing a factual sufficiency challenge, an appellate court examines all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). We can set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *Cain,* 709 S.W.2d at 176. "[I]n a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses." *Sw. Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.– Houston [1st Dist.] 1992, writ denied). "The judge may take into consideration all the facts and surrounding circumstances in

connection with the testimony of each witness and accept or reject all or any part of that testimony.". *Munters Corp. v. Swissco–Young Indus., Inc.,* 100 S.W.3d 292, 297 (Tex.App.–Houston [1st Dist.] 2002, pet. dism'd.); *Lyles,* 825 S.W.2d at 493.

### 1. Arguments of the Parties

The Lemuses contend that when the warranty deed was executed on January 7, 2009, Elvira had sufficient mind and memory to understand the nature and effect of her act.

The appellees counter the evidence substantiates that Elvira lacked mental capacity to sign the warranty deed. As proof, the appellees contend the medical records unambiguously prove Elvira suffered from Alzheimer's disease, psychosis, and a plethora of other cognitive impairments on January 7, 2009.

### 2. Mental Capacity

 The law presumes "a person possesses the requisite mental capacity at the time of executing a conveyance deed." *Decker v. Decker,* 192 S.W.3d 648, 652 (Tex.App.–Fort Worth 2006, no pet.). Thus, the party contesting a signatory's mental capacity bears the burden of proof. *Id.* We consider evidence concerning capacity prior to or subsequent to the time of the conveyance. *Id.* In doing so, courts look to circumstantial evidence as potential proof of an individual's "capacity or the lack thereof." *Kalina v. Burns,* No. 14–08–00589–CV, 2009 WL 2176313, at *2 (Tex.App.–Houston [14th Dist.] Jul. 23, 2009, pet. denied) (mem.op.). Specifically, we consider "(1) the conduct of the party in question, (2) circumstances tending to produce a particular mental condition, and (3) prior or subsequent existence of a mental condition from which a party's capacity or incapacity at the time in question may be inferred." *Id.* (citing *In re Estate of*

*Robinson,* 140 S.W.3d 782, 793 (Tex.App.–Corpus Christi 2004, pet. denied)).

### 3. *Trial Court Findings*

After hearing the testimony, considering the credibility of witnesses, and reviewing Elvira's medical records, the trial court found by a preponderance of the evidence that Elvira was (1) suffering from advanced Alzheimer's disease, and (2) did not have the requisite capacity to understand the nature of making the conveyance or its effect in transferring ownership of the property to the Lemuses. As such, the trial court found the January 7, 2009 deed to Irma and Manuel Lemus void for want of capacity.

### 4. *Analysis*

■ Although the Lemuses contend Elvira possessed the requisite capacity, the record is replete with evidence that Elvira suffered from advanced Alzheimer's disease and could not understand the nature or the effect of transferring ownership of the property. Based on a review of the entire record, and testimony of the witnesses, we cannot say the trial court's determination that Elvira lacked the requisite mental capacity was clearly wrong or unjust. *Inwood Nat'l Bank v. Wells Fargo Bank, N.A.,* 463 S.W.3d 228, 234–35 (Tex.App.–Dallas 2015, no pet.) (citing *Dow Chem. Co.,* 46 S.W.3d at 242). Accordingly, we overrule the Lemuses' issue regarding Elvira's mental capacity.

We next turn to whether the Lemuses are entitled to recover monies expended on repairs and improvements to the residence in question.

## B. Reimbursement for Repairs and Improvements

### 1. *Argument of the Parties*

Because they expended monies for repairs and improvements in good faith, the Lemuses contend the trial court erred in failing to award costs associated with the repairs, improvements, and taxes to the 106 Cameo Avenue property. The Lemuses further argue the appellees were unjustly enriched by the Lemuses' labor and money.

The appellees counter the Lemuses failed to plead the claim for improvements as required by Texas Property Code section 22.021(c). *See* TEX. PROP. CODE ANN. § 22.021(c) (West 2014). Specifically, the appellees contend the Lemuses cannot assert a good faith argument because the repairs were not begun until after the appellees filed the trespass to try title suit. Alternatively, the appellees contend that, should the court find the Lemuses acted in good faith, Texas Property Code section 22.021 only allows for recovery of the value of the improvements—not the cost of repairs—offset by the value of use and occupancy. *See id.* Finally, the appellees argue the Lemuses failed to provide either (1) evidence of any increase in value of the property, or (2) the value of the Lemuses use and occupancy for the preceding five years. *See id.*

### 2. *Statutory Requirements*

The Texas Property Code section 22.021 addresses claims for improvements:

(a) A defendant in a trespass to try title action who is not the rightful owner of the property, but who has possessed the property in good faith and made permanent and valuable improvements to it, is either:

(1) entitled to recover the amount by which the estimated value of the defendant's improvements exceeds the estimated value of the defendant's use and occupation of and waste or other injury to the property; or

(2) liable for the amount by which the value of the use and occupation of

and waste and other injury to the property exceeds the value of the improvements and for costs.

*Id.* § 22.021(a).

Additionally, the defendant asserting a claim for improvements must plead as follows:

(1) that the defendant and those under whom the defendant claims have had good faith adverse possession of the property in controversy for at least one year before the date the action began;

(2) that they or the defendant made permanent and valuable improvements to the property while in possession;

(3) the grounds for the claim;

(4) the identity of the improvements; and

(5) the value of each improvement.

*Id.* § 22.021(c).

*3. Analysis*

█ Texas Property Code section 22.021 does not allow for direct reimbursement for money spent, but rather for the value of the improvements offset by the value of use and occupancy. *See id.; Wilhoite v. Sims,* 401 S.W.3d 752, 761 (Tex. App.–Dallas 2013, no pet.). Even if the Lemuses' belief that they possessed superior title was plausible, and that they made the improvements in good faith, the Lemuses only provided receipts for material and labor and no evidence as to the value of the improvements to the land. The Lemuses possessed and controlled the property from January 2009 until the trial court ordered the deed void. There is no evidence whether the value of the Lemuses'. use and occupancy of the property for the preceding five years would outweigh any amount of increase in the property's value. *See Mason v. Mason,* No. 07–12–00007–CV, 2014 WL 199649, at *5 (Tex.

App.–Amarillo Jan. 13, 2014, no pet.) (citing *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990)) (concluding party seeking reimbursement bore burden to establish all elements on the claim). Based on the entire record, we cannot say the denial of the Lemuses' claims for reimbursement of improvements to the 106 Cameo Avenue property was clearly wrong or unjust. *See Dow Chem. Co.,* 46 S.W.3d at 241; *see also City of Keller,* 168 S.W.3d at 827.

### AWARD OF ATTORNEY'S FEES

█ The trial court's award of attorney's fees was based on section 37.009 of the Texas Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (West 2014). Section 37.009 provides "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* "When an appellate court reverses a declaratory judgment, it may reverse an attorney's fee award, but it is not required to do so." *Kachina Pipeline Co., Inc. v. Lillis,* 471 S.W.3d 445, 455 (Tex.2015) (citing *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.,* 128 S.W.3d 304, 324 (Tex.App.–Dallas 2004, no pet.) ("[A]fter a declaratory judgment is reversed on appeal, an award of attorneys' fees may no longer be equitable and just.")); *see also McLendon v. McLendon,* 862 S.W.2d 662, 673 (Tex.App.–Dallas 1993, writ denied) (concluding in a suit for declaratory judgment that the trial court may award attorney's fees to the nonprevailing party); *Barshop v. Medina Cty. Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996) (determining award of attorney's fees in declaratory judgment actions is not dependent on finding a party "substantially prevailed"). Because the fees were awarded under section 37.009, we remand this matter to the trial

court for further findings whether the trial court's previous attorney's fees determination is "equitable and just." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Kachina Pipeline Co., Inc.*, 471 S.W.3d at 455.

## CONCLUSION

Because we conclude the "March 11, 2005 Will" was neither a gift deed nor a valid will for Elvira G. Aguilar, we reverse the portions of the trial court's judgment awarding John Rene Aguilar, Laura Ashley Well, and Johnny B. Wells title to the property located at 106 Cameo Avenue, San Antonio, Texas and the award of attorney's fees. We affirm the remaining portions of the trial court's judgment, and remand this matter to the trial court for further proceedings consistent with this opinion.