

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROSALIE GRAF SCHNEIDER,[1] | § | No. 08-14-00300-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | County Court at Law Number Five |
| CHARLES WHATLEY AND VIRGINIA WHATLEY, | § | of El Paso County, Texas |
| | § | |
| Appellees. | § | (TC# 2014-CCV00803) |
| | § | |
| | § | |

## O P I N I O N

Charles Andrew Whatley and Virginia Graf Whatley sought relief against Rosalie Graf Schneider pursuant to Texas Property Code Section 92.109, which permits recovery from a landlord who in bad faith retains a security deposit. Schneider counterclaimed for breach of contract. TEX.PROP.CODE ANN. § 92.109(a) (West 2014). After a bench trial, and as authorized by Section 92.109, the trial court entered judgment against Schneider, holding her liable for the sum of $100 plus three times $1,990, the balance of the wrongfully withheld security deposit

---

[1] Although the trial court judgment identifies Schneider's first name as "Rosalie," Schneider's signature and the signature block on the lease identify her as "Roselie."

balance, and awarded the Whatleys reasonable attorneys' fees of $3,000. TEX.PROP.CODE ANN. § 92.109(a) (West 2014).

In a single issue, Schneider contends the evidence is legally insufficient to support a finding that she acted in bad faith as required under Section 92.109(a). TEX.PROP.CODE ANN. § 92.109(a) (West 2014). For the following reasons, we affirm.

## FACTUAL SUMMARY

### The Lease, Security Deposit, and Landlord's Notice of Retention

In June 2012, the Whatleys leased Schneider's El Paso house while she lived out of state. They paid a security deposit of $2,650, and on April 19, 2013, gave written notice of their intention to move on June 30, 2013. Schneider had a new tenant move in on July 1, 2013.

After the Whatleys moved, Schneider sent written notice dated July 10, 2013, which included a list of repairs for which she had obtained estimates. The list included removal of stapled cables on the floor, door, molding and walls of the house; preparation and painting of walls and alcoves through the house; "touch up" of walls throughout the house; removal of towel bars in the bathrooms and window blinds in the office; patching and painting; removal of shelves from garage walls; repair of a garage wall; removal of a satellite dish; repair of roof damage; and the repair of "elastomeric paint from speaker area." Schneider included estimates totaling $3,142.56, and after deducting the security deposit of $2,650, she informed the Whatleys they owed her $492.56.

The Whatleys' attorney notified Schneider that with her knowledge, they had made improvements to the home at their own expense as permitted by the terms of the lease. The letter also noted that as late as April 2013, Schneider had expressed her gratitude and appreciation for

2

the Whatleys "taking such good care" of the home. The Whatleys suggested that the reasonable cost of reimbursement for repairs would be approximately $300 to $400. Pursuant to Sections 92.102 and 92.103 of the Property Code, the Whatleys demanded that Schneider refund their security deposit less itemized repair charges on or before thirty days of the date on which the Whatleys had surrendered the property and gave Schneider a forwarding address supported by receipts for the repair work performed. *See* TEX.PROP.CODE ANN. §§ 92.102, 92.103 (West 2014).

### Trial De Novo

In December 2013, the case proceeded to trial in the justice court, and concluded with a judgment entered against Schneider. Schneider appealed, and the case proceeded to a *de novo* bench trial in county court in August 2014. TEX.R.CIV.P. 506.3. The trial court heard evidence from seven witnesses. Charles acknowledged that the terms of the lease permitted deductions of reasonable charges from the security deposit for restoration of walls, flooring, landscaping or any alterations not approved in writing by the landlord, and agreed that Schneider had not approved changes in writing but noted that she had thanked them in writing. The Whatleys claimed they had made changes to the house with Schneider's permission, which was expressed to them either verbally or by email. They had subsequently recapped with Schneider the modifications that had been made.

Schneider admitted that the Whatleys would inform her of the work performed but noted that they would present it "like it was a good thing[.]" Schneider felt that she could not change completed additions. After the Whatleys vacated the home, Schneider preferred that the house be returned to its original state. She secured estimates which formed the basis of her retention and demand letter to the Whatleys. With the exception of the bathroom towel bars that the Whatleys

3

had installed and the cleaning of the garage "carpet," Schneider alleged that all repair work in the house had been performed but the security deposit was insufficient to cover the actual cost of repairs in the sum of $3,065, which she believed to be reasonable.

Charles acknowledged that under the terms of the lease, he and Virginia were prohibited from removing any fixtures they installed at the house because the lease provided that all fixtures would become the property of the landlord. He described the relationship with Schneider as friendly until the Whatleys' attempts to obtain financing to purchase the home had been rejected.

Having considered this and other evidence and testimony, including photographs, estimates, and the terms of the lease, the trial court ruled that Schneider could properly retain $660 spent to repair certain alterations, but she was not entitled to compensation or retention of the security deposit for repairs made due to normal wear and tear, and would be required to return the remainder to the Whatleys. The trial court also expressly found Schneider to be "in violation of the Property Code . . . in not returning the remainder [of the security deposit], which would have been $1,990." After it assessed damages of "$100 plus three times the amount that should have been returned in the amount of $1,990" the trial court awarded attorneys' fees to the Whatleys and declared that Schneider take nothing. In its written findings of fact and conclusions of law, the trial court failed to make an express finding that Schneider acted in bad faith.

## SUFFICIENCY OF THE EVIDENCE

In her sole issue, Schneider challenges the legal sufficiency of the evidence to support the trial court's implied finding that she acted in bad faith. *See* TEX.PROP.CODE ANN. § 92.109(a) (West 2014).

### Standard of Review

4

We will sustain a challenge to the legal sufficiency of the evidence only if: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014). We must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). The trial court, as fact finder, is the sole judge of the credibility of the witnesses in a bench trial. *Sw. Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.--Houston [1st Dist.] 1992, writ denied). The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of the testimony. *Lemus v. Aguilar*, 491 S.W.3d 51, 59 (Tex.App.--San Antonio 2016, no pet.).

**Applicable Law**

The Texas Property Code provides that a landlord "shall refund a security deposit to the tenant on or before the 30th day after the date the tenant surrenders the premises," provided the tenant has given the landlord a written statement of their forwarding address for purposes of refunding the security deposit. TEX.PROP.CODE ANN. §§ 92.103, 92.107 (West 2014). With limited exceptions, if the landlord retains any part of the security deposit, she must give the tenant a written description and an itemized list of all deductions along with the balance of the deposit. TEX.PROP.CODE ANN. § 92.104 (West 2014).

When a tenant brings a cause of action to recover a wrongfully held security deposit, the

5

landlord has the burden of proving that the retention of any portion of the security deposit was reasonable. TEX.PROP.CODE ANN. § 92.109(c) (West 2014). When there are no permanent damages to the premises, the landlord is entitled to the reasonable cost of repairs as the proper measure of damages if she waits until after the term of the lease has expired to seek damages. *See Pulley v. Milberger*, 198 S.W.3d 418, 429 (Tex.App.--Dallas 2006, pet. denied). However, the landlord is not permitted to retain any portion of a security deposit to cover normal wear and tear. TEX.PROP.CODE ANN. § 92.104(b) (West 2014). Wear and tear is defined as deterioration that results from the intended use of a dwelling including breakage or malfunction due to age or deteriorated condition, but does not include deterioration that results from negligence, carelessness, accident, or abuse of the premises. *See* TEX.PROP.CODE ANN. § 92.001(4) (West 2014).

The Property Code further provides that a landlord who in bad faith retains a security deposit in violation of this subchapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees. TEX.PROP.CODE ANN. § 92.109(a) (West 2014). A landlord is presumed to have acted in bad faith if she fails either to return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the date a tenant surrenders possession. TEX.PROP.CODE ANN. § 92.109(d) (West 2014).

<u>**Analysis**</u>

Most cases brought under Section 92.109 involve circumstances in which a presumption of bad faith exists. The statutory presumption of bad faith does not apply here because the evidence established that Schneider provided a written description and itemization of deductions

6

to the Whatleys on or before the 30th day after the date they surrendered possession of the house. TEX.PROP.CODE ANN. § 92.109(d) (West 2014).

Because no presumption of bad faith exists, it is an element of the cause of action that the Whatleys were required to establish at trial. A residential landlord acts in bad faith if she either "acts in dishonest disregard of the tenant's rights or intends to deprive the tenant of a lawfully due refund." *Johnson v. Waters at Elm Creek, L.L.C.*, 416 S.W.3d 42, 47 (Tex.App.--San Antonio 2013, pet. denied). A landlord's mere intentional retention of the security deposit beyond the thirty day statutory period does not establish the landlord's dishonest intent to deprive the tenant of the deposit. *Shamoun v. Shough*, 377 S.W.3d 63, 72 (Tex.App.--Dallas 2012, pet. denied), *quoting A.B. Inv. Corp. v. Dorman*, 604 S.W.2d 506, 508 (Tex.Civ.App.--Dallas 1980, no writ).

In its findings of fact, the trial court found that Schneider could properly deduct from the security deposit $495 for repair to the roof, $75 to remove television cables, $25 for repairs to the kitchen, and $65 for repairs to the office, thus implicitly finding these expenses to be reasonable. The trial court also found that Schneider had "wrongfully withheld" the balance of the security deposit in the amount of $1,990. Among its conclusions of law, the trial court declared that the Whatleys had performed all conditions of the lease and had performed all requirements necessary to be entitled to a refund of their security deposit, including efforts to clean, repair, and restore the property to the same or better condition.

Findings of fact filed by the trial court shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. TEX.R.CIV. P. 299. When a court makes findings of fact but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply by implication any omitted, unrequested element that is

7

supported by evidence. *See* TEX.R.CIV.P. 299. When a party fails to timely request additional findings of fact, she is deemed to have waived the right to complain on appeal of the court's failure to enter additional findings. *Briargrove Park Property Owners, Inc. v. Riner,* 867 S.W.2d 58, 62 (Tex.App.--Texarkana 1993, writ denied); *Cities Services Co. v. Ellison,* 698 S.W.2d 387, 390 (Tex.App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.). Further, where the original findings omit a finding of a specific ground of recovery which is crucial to the appeal, failure to request an additional finding will constitute a waiver of the issue. *Poulter v. Poulter,* 565 S.W.2d 107, 111 (Tex.Civ.App.--Tyler 1978, no writ). Here, the record reflects a deemed finding of bad faith. Schneider failed to ask for additional fact findings to avoid this waiver.

Because the current tenants were using the towel bars, Schneider had authorized the contractor to allow the current tenants' belongings to remain on the towel racks. Schneider wanted the bathroom towel bars removed, in essence, because she had no need for them and did not use them. Although Schneider had authorized the Whatleys to paint the house a neutral color at their expense, she preferred the original colors of the home, which included black, and she sought to recover the cost to repaint the house. Although the house had a garage, Schneider thought it was merely possible that the Whatleys would park their cars in it, and wanted to recover cleaning costs of the garage carpet that was stained. She also wanted to recover the expense of removing the professionally-installed garage shelves because she personally did not want them in the garage, despite the fact that there was unrefuted testimony that her items were stored on them and photographs showed the current tenants were using them. Schneider's negative testimony regarding the installation of window blinds was countered by her congratulatory email. She sent another email to the Whatleys thanking them for making repairs to the exterior speakers at their

8

own expense.

As fact finder, the trial court was permitted to consider all the facts and surrounding circumstances in connection with the testimony of each witness, and to accept or reject all or any part of the testimony. *Lemus*, 491 S.W.3d at 59. This evidence, in part or in whole, supports a determination that Schneider acted in dishonest disregard of the Whatleys' rights or intended to deprive the Whatleys of a lawfully due refund, and therefore supports the deemed finding of bad faith. *See* Tex.R.Civ.P. 299; *Waters at Elm Creek, L.L.C.*, 416 S.W.3d at 47. The sole issue on appeal is overruled.

The judgment of the trial court is affirmed.


ANN CRAWFORD McCLURE, Chief Justice
November 29, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

9