

# NUMBER 13-19-00484-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF ROOSEVELT GREEN SR., DECEASED

**On appeal from the County Court
of Matagorda County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Justice Hinojosa**

Appellant Katie Green Sampson appeals the trial court's granting of a declaratory judgment in a probate matter. By three issues which we interpret as two, Sampson argues: (1) the trial court's findings of fact and conclusions of law are against the overwhelming weight of the evidence, specifically the finding that there was no accident or mistake when her father, Roosevelt "Buddy" Green Sr., executed a gift deed in favor of her sister, appellee Brenda Raymond; and (2) Raymond engaged in self-dealing. We affirm.

## I.  BACKGROUND

## A.  Underlying Facts

Green died at the age of 101 on January 23, 2018. Green fathered fourteen children in his lifetime, ten of whom were still alive at the time of his death. It is undisputed that in 2009, Green's daughter Raymond quit her job as a teacher after thirty-three years in the Columbia-Brazoria Independent School District to become Green's full-time caretaker. Raymond stated that she shopped and cooked for her father, paid his bills, did his laundry, and drove him to see his friends, to church, and to doctor appointments. Green executed a power of attorney appointing Raymond to act as Green's attorney-in-fact. Raymond also claimed that she paid $40,000 to build a fence to enclose his property and helped him purchase a new trailer home when his older home fell into disrepair. When Green became unable to live by himself, Raymond made her home wheelchair accessible for her father. To pay her own bills, Raymond worked part-time as a custodian for the City of Lake Jackson. Her son, Samuel Raymond, would care for Green when Raymond had to work. Raymond stated that her other siblings rarely, if ever, visited their father.

Green executed three wills in his lifetime—in 2006, 2012, and 2016. All three wills conveyed Green's entire estate to Raymond. The 2016 will specifically disinherited Green's remaining children by name and set forth that they understood the reasons for this decision:

M.   No Provision in Will for Certain Children. It is my intention to make no provisions in this Will for my children, Dinah Murphy, Evelyn Steptoe, Alnita Brown, Flora Goodwin, Clarence Green, Katie Sampson, Ervin Green, Vernia Green and Robert Green, and they are familiar with the reasons.

2

On September 7, 2017, Green executed a gift deed in favor of Raymond, awarding her two parcels of property he owned, one which Green obtained via a partition lawsuit which concluded after the 2016 will was executed. This gift deed was acknowledged by Raymond, and it was notarized and filed with the Matagorda County Clerk's Office that the same day. The gift deed set forth that it was for and in consideration of "the love and affection" Green had for Raymond.

Green became seriously ill on October 31, 2017. Following his discharge from the hospital on November 7, 2017, Raymond arranged for Green to receive rehabilitation care at Woodlake Nursing Home in Clute, Texas. At this time, one of Green's daughters, Sampson, stated she "decided to go over to Matagorda County Appraisal District online tax roll." While perusing the property records online, Sampson discovered Green's gift deed leaving his properties to Raymond only. Sampson took a photograph of the online tax roll with her cell phone. The next day, on November 8, 2017, Sampson, along with her husband Lee Sampson and her brother Clarence Green, confronted Green about the gift deed at the rehabilitation center.

According to Sampson, Green became very upset upon learning that his properties would only be conveyed to one of his children. Green allegedly proclaimed that it was a mistake. Green told Sampson that he intended for his property to be split evenly among his surviving children "to go from generation to generation." On her father's alleged urging, Sampson subsequently made an appointment with Green's attorney, Phillip Hundl, to discuss revoking the gift deed. On November 14, 2017, Sampson, Lee, Clarence, and another brother Robert Green attempted to meet with Hundl to have the gift deed revoked.

3

Hundl, however, explained that he represented Green and could not speak to them about the matter without his client's permission.[1]

Two days later, on November 16, 2017, Sampson, Lee, and Clarence drove Green from his rehabilitation center to Hundl's office. The attorney met only with Green. At the end of the meeting, Green left with a copy of his 2016 will and power of attorney documents. He had not revoked any documents. At trial, Hundl explained that his understanding of the law was that he could not reverse a gift of land that had already been acknowledged and received by the grantee, Raymond.

According to Sampson, Green asked her to find him a new attorney that would help him revoke the gift deed and the 2016 will. Sampson subsequently made an appointment with Raymon Jordan, a Houston lawyer who had previously performed legal work for her. On November 17, 2017, Sampson, her husband, Clarence, and Robert again took Green from his rehabilitation center and drove him to Harris County. There, Green met with Jordan and Jordan's longtime paralegal Vicki Mitchell. Green executed a revocation of his 2016 will, the 2017 gift deed, and his power of attorney, wherein he removed Raymond as his attorney-in-fact and named instead his sons Clarence and Robert. Mitchell testified that at that meeting, Green "was quite adamant he had no intention of disinheriting any of his children. He intended for them all to share equally." She also admitted that the gift deed cancellation had a scrivener's error: it stated that it was executed in Wharton County when it was actually executed in Harris County.

---

[1] During his testimony, Hundl also clarified that Raymond was not his client, but that he spoke with her on the phone on occasion because she was Green's attorney-in-fact.

Green died two months later.

## B.    Probate Litigation

On June 15, 2018, Raymond filed a declaratory judgment action in Matagorda County probate court, requesting that the court find that the revocation of her father's gift deed and will were invalid. After a bench trial in September 2018, the court ruled as follows:

A.    The [Gift] Deed dated September 7, 2017, and filed under Clerk's File No. 2017-4873 in the official records of Matagorda County, Texas is valid and enforceable.

B.    The "Cancelation of Gift Deed" dated November 20, 2017, and filed under Clerk's File No. 2017-6379 in the official records of Matagorda County, Texas is null and void.

C.    The "Cancelation of Gift Deed" dated November 20, 2017, and filed under Clerk's File No. 2017-6379 in the official records of Matagorda County, Texas is invalid and unenforceable.[2]

Thereafter, Sampson requested findings of fact and conclusions of law from the court. The court issued the following:

1.    Final Judgment as to the Gift Deed to [Raymond] was signed on September 18, 2019, a Judgment Nunc Pro Tunc was signed on September 30, 2019.

2.    Evidence presented during trial included the three (3) Last Will & Testaments, executed in 2006, 2012 and 2016, wherein [Green], bequeathed all his property, real and personal, to Plaintiff [Raymond]. On September 12, 2019, this Court held the Gift Deed, executed on September 7, 2017 (the "Deed"), was valid, and as such could not be canceled.

3.    On or about September 7, 2017, [Green], intended to execute the Gift Deed conveying real property to his daughter, Plaintiff Raymond,

---

[2] The trial court orally pronounced that Green's revocation of his 2016 will, however, was valid. Green thus died intestate, with the remainder of his estate to be disbursed under the Texas Estates Code. *See generally* TEX. EST. CODE ANN. § 201.101.

which is evidenced under Clerk's File No. 2017-4873 in the official records of Matagorda County, Texas.

4.  [Green] executed the Gift Deed and intended to wholly divest himself of dominion and control of the real property particularly described as follows:

    [Legal description omitted].

5.  Plaintiff Raymond accepted the Deed as evidenced by her signature thereto completing all formalities required to be a valid gift of the Property.

6.  There was no credible evidence that the Gift Deed was executed as a result of accident, mistake or fraud by or upon the Grantor.

7.  There was insufficient evidence to find the reasonable and necessary attorneys' fees attributable to the Contestant, [Sampson], and Contestant did not segregate fees between the Gift Deed issues and the Will Contest issues. The Court finds that an award of attorneys' fees against the Plaintiff, [Sampson], would not be equitable or just.

Sampson appeals.

## II.   GIFT DEED

In her first issue, Sampson contends the trial court's findings of fact and conclusions of law are against the overwhelming weight of the evidence, specifically the finding that there was no accident or mistake made when Green executed a gift deed solely in favor of Raymond.

### A.   The Law Regarding Gift Deeds

"Whether a document is a valid gift deed is a question of law and reviewed de novo." *Lemus v. Aguilar*, 491 S.W.3d 51, 56 (Tex. App.—San Antonio 2016, no pet.); *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App—San Antonio 2011, pet. denied). Our primary duty is to ascertain the intent of the parties as provided within the four corners

6

of the document. *Garza v. Prolithic Energy Co., L.P.*, 195 S.W.3d 137, 141 (Tex. App.—San Antonio 2006, pet. denied) (citing *Luckel v. White*, 819 S.W.2d 459, 461–63 (Tex. 1991)). To do this, we must examine and consider the entire writing to harmonize and give effect to all the provisions of the agreement, even if different parts appear inconsistent or contradictory. *Hausser*, 345 S.W.3d at 466; *Garza*, 195 S.W.3d at 141.

A conveyance of an interest in real property must be: (1) in writing; (2) signed by the grantor; and (3) delivered by the grantor. *See* TEX. PROP. CODE ANN. § 5.021. "A valid gift of real property further requires the document set forth (1) the intent of the grantor, (2) the delivery of the property to the grantee, and (3) the gift to be accepted by the grantee." *Lemus*, 491 S.W.3d at 57. "In Texas, it is settled that title to real property will vest upon execution and delivery of the deed." *Thompson v. Six Shooter Enters., LLC*, ___ S.W.3d ___, 2021 WL 3674120, at *4 (Tex. App.—El Paso 2021, no pet. h.) (citing *Stephens Cty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974)). Recording a deed is not required to pass title. *Id*. (citing *Noell v. Crow-Billingsley Air Park Ltd. P'ship*, 233 S.W.3d 408, 416 (Tex. App.—Dallas 2007, pet. denied)). "The recording, however, establishes a prima facie case of delivery and the accompanying presumption that the grantor intended to convey the land according to the terms of the deed." *Id*. (citing *Swenson*, 517 S.W.2d at 261–62).

A deed that has been "signed, acknowledged and placed of record" carries a presumption that the grantor intended to transfer the real property. *Thornton v. Rains*, 299 S.W.2d 287, 288 (Tex. 1957). However, "this presumption may be overturned where there is proof that the recording of the instrument was for some other purpose or through

7

fraud, accident or mistake." *Id.*

**B.     The Law on Findings of Fact and Conclusions of Law**

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). "When reviewing a factual sufficiency challenge, an appellate court examines all of the evidence—both the evidence that supports the finding and the evidence that controverts the finding." *Lemus*, 491 S.W.3d at 59; *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). "We can set aside the finding of fact only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Lemus*, 491 S.W.3d at 59; *see Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Cain,* 709 S.W.2d at 176.

"[I]n a bench trial, the trial court, as fact-finder, is the sole judge of the credibility of the witnesses." *Lemus*, 491 S.W.3d at 59 (citing *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). "The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony." *Id.*; *see Munters Corp. v. Swissco–Young Indus., Inc.*, 100 S.W.3d 292, 297 (Tex. App.—Houston [1st Dist.] 2002, pet. dism'd.); *Lyles,* 825 S.W.2d at 493.

**C.     Analysis**

Here, we look within the four corners of the gift deed to ascertain the intent of the parties. *Garza*, 195 S.W.3d at 141; *Luckel*, 819 S.W.2d at 461–63. We note that on September 7, 2017, Green, the "grantor," executed a gift deed in favor of his daughter

Raymond, the "grantee." The gift deed plainly described the two properties to be conveyed. The deed also set forth that it was "for and in consideration the sum of ONE AND NO/100 ($1.00), and the love and affection which" Green had for Raymond, his sole caretaker and provider for over a decade. *See Lemus*, 491 S.W.3d at 57.

The document is (1) in writing; (2) signed by Green; and (3) was delivered by Green to Raymond. TEX. PROP. CODE ANN. § 5.021. There is no dispute that both Green and Raymond signed the document, and it was properly notarized. The fact that the parties filed the document with the Matagorda County Clerk's Office the same day it was executed further buttresses the presumption that Green intended to transfer these two parcels of real property. *See Thornton*, 299 S.W.2d at 288. Examining and considering the entire writing to harmonize and give effect to all the provisions of the agreement, we conclude that the gift deed is valid. *Hausser*, 345 S.W.3d at 466; *Garza*, 195 S.W.3d at 141.

Regarding whether there was evidence that the gift deed was executed by mistake or accident, the evidence shows that Raymond quit her career as an educator in 2009 to become her father's full-time caretaker and provider. Raymond shopped for and cooked meals for her father, ensured that his bills were timely paid, did his laundry, and transported him to see his friends, attend church, and visit his medical providers regularly. Raymond testified that she made several out-of-pocket improvements to her father's home and property. She also made her home handicap-accessible when Green could no longer live by himself.

9

Raymond entered all three of Green's wills into evidence. These wills were executed in 2006, 2012, and 2016. All three wills conveyed Green's entire estate to Raymond. The 2016 will specifically disinherited Green's remaining children (including Sampson) by name and set forth that "they [were] familiar with the reasons." The gift deed provided that the conveyance was in consideration of the "love and affection" Green had for Raymond, his daughter and primary caretaker. It also echoed the wishes Green set forth in his three previous wills—that Raymond inherit his full estate.

Although Sampson and Mitchell testified that the gift deed was a mistake and that Green intended for his children "to share equally" in his land, the trial court may have discredited this testimony. *See Lemus*, 491 S.W.3d at 59. The trial court could have questioned Sampson's credibility, as she admitted that she confronted her 101-year-old father about the gift deed a day after he was discharged from the hospital with a screen shot from her cell phone. *Id*. The trial court could have also placed less emphasis on Mitchell's testimony, as the legal assistant admitted there was a scrivener's mistake in the gift deed revocation which represented that it was executed in Wharton County instead of Harris County. *Id*. Finally, the trial court may have considered Green's advanced age and ill health at the time he executed the revocation of the gift deed, and the fact that Green died a mere two months later. *Id*.

"The trial court, as the fact finder, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Magness v. Magness*, 241 S.W.3d 910, 913 (Tex. App.—Dallas 2007, pet. denied). The court is therefore free to disbelieve any or all of a witness's testimony. *Id*. (concluding there was no "fraud,

accident, or mistake" when a wife re-financed her separate property during a marriage, thus transferring a one-half interest to her husband, and the trial court characterized the real property as one-half her separate property and one-half her husband's separate property upon divorce). In light of the foregoing, it appears the trial court concluded that Sampson did not establish accident or mistake in Green's execution of the gift deed. *Id*.

Examining both the evidence that supported the findings and the evidence that controverted the findings, we conclude that the findings of fact are factually sufficient. *See Cain*, 709 S.W.2d at 176. The findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id*.; *Francis*, 46 S.W.3d at 241. We overrule this issue.

### III.    SELF-DEALING

In her third issue, Sampson argues that because Raymond had Green's power of attorney, Raymond breached her fiduciary duty to Green and engaged in self-dealing when she became the beneficiary of the gift deed.

"Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Further, "[s]elf-dealing can be generally defined as an occurrence in which the fiduciary uses the advantage of his position to gain a benefit at the expense of those to whom he owes a fiduciary duty." *Mims-Brown v. Brown*, 428 S.W.3d 366, 374 (Tex. App.—Dallas 2014, no pet.).

11

However, Raymond points out that Sampson never raised the issues of breach of fiduciary duty or self-dealing in her pleadings. *See* TEX. R. APP. P. 33.1(a). We agree. Because we cannot review an issue that the trial court has not first considered, this issue has not been preserved for our review. *Id*. We overrule this issue.[3]

## IV.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
28th day of October, 2021.

---

[3] In her reply brief, Sampson argues that if we conclude she did not raise the breach of fiduciary duty issue or self-dealing before the trial court, we should consider whether the parties tried this issue by consent. *See* TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). We decline this invitation. "An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court." *City of Donna v. Ramirez*, 548 S.W.3d 26, 34 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied).

12